UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SIRIUS AMERICA INSURANCE COMPANY,      :

         Plaintiff,                       :        05 Civ. 7923 (BSJ) (GWG)

  -v.-                                :       **REPORT AND RECOMMENDATION**

SCPIE INDEMNITY COMPANY,          :

         Defendant.                  :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

On August 12, 2005, plaintiff Sirius America Insurance Company ("Sirius") filed a motion for summary judgment in lieu of a complaint in the Supreme Court of the State of New York, New York County. The motion alleged that defendant SCPIE Indemnity Company ("SCPIE") had failed to make payment to Sirius that SCPIE had guaranteed under a reinsurance agreement between Sirius and American Healthcare Indemnity Company ("AHI"). SCPIE removed the action to this Court and now moves to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the following reasons, SCPIE's motion should be denied.

I. BACKGROUND

    A. Sirius's Claim

The following facts are taken from the motion papers Sirius filed in state court to commence their action. We assume them to be true for purposes of the motion to dismiss.

On April 1, 2002, Sirius and AHI entered into a Bond Quota Share Reinsurance Agreement ("Share Agreement") pursuant to which AHI agreed to pay 25% of the losses and loss adjustment expenses paid by Sirius in connection with a program of criminal bail bond business managed by Capital Bonding Corporation, Inc. See Affidavit of Jean Marie Cho in

Support of Summary Judgment in Lieu of Complaint, dated Aug. 11, 2005 (reproduced in Ex. A to Notice of Removal, filed Sept. 12, 2005 (Docket #1) ("Removal Not.")) ("Cho Aff."), ¶ 3. Prior to entering into the Share Agreement, Sirius had entered into a "Guarantee Agreement." Under this agreement, SCPIE had guaranteed "any and all sums payable to [Sirius] by AHI in accordance with the terms of any contract of Reinsurance entered into between [AHI and Sirius]." Guarantee Agreement (reproduced in Ex. A to Removal Not.) ("Guarantee Agreement"), ¶ 2.

As of the date of Sirius's motion for summary judgment, AHI owed Sirius $1,018,304 in losses and loss adjustment expenses under the Share Agreement. AHI has refused to pay any of that amount. See Cho Aff. ¶ 6. On July 13, 2005, counsel for Sirius sent a letter to SCPIE demanding that it honor the terms of the Guarantee Agreement and pay the money owed to Sirius by AHI. On July 26, 2005, counsel for SCPIE responded by rejecting Sirius's demand. See Cho Aff. ¶¶ 7-8.

B. Procedural History

On August 12, 2005, Sirius filed in New York County Supreme Court a summons and motion for summary judgment in lieu of a complaint, as is permitted by New York Civil Practice Law and Rules ("C.P.L.R.") § 3213. See Notice of Motion, filed Aug. 12, 2005 (reproduced in Ex. A to Removal Not.); Cho Aff.; Plaintiff's Memorandum of Law in Support of Summary Judgment in Lieu of Complaint, filed Aug. 12, 2005 (reproduced in Ex. A to Removal Not.) ("Pl. Mem."). Sirius alleged that SCPIE was subject to personal jurisdiction in the New York courts pursuant to C.P.L.R. § 302(a)(1). See Cho Aff. ¶ 10.

On September 12, 2005, SCPIE filed a notice of removal, removing the action to this

Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  See Removal Not.  On September 19, 2005, SCPIE moved to dismiss the action for lack of personal jurisdiction.  See Notice of Motion to Dismiss for Lack of Personal Jurisdiction, filed Sept. 19, 2005 (Docket #4) ("Def. Mot."); Declaration of Timothy C. Rivers, dated Sept. 16, 2005 (attached to Def. Mot.) ("Rivers Decl."); Memorandum of Law in Support of Defendant SCPIE Indemnity Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), dated Sept. 19, 2005 (attached to Def. Mot.) ("Def. Mem.").

On October 4, 2005, Sirius filed opposition papers.  See Memorandum of Law of Sirius America Insurance Company in Opposition to SCPIE Indemnity Company's Motion to Dismiss, filed Oct. 4, 2005 (Docket #5) ("Pl. Opp."); Declaration of Jean Marie Cho, filed Oct. 4, 2005 (Docket #6) ("Cho Decl.").  On October 14, 2005, SCPIE filed its reply.  See Reply Memorandum of Law in Further Support of Defendant SCPIE Indemnity Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), filed Oct. 14, 2005 (Docket #8) ("Def. Reply"). Sirius sent a sur-reply letter to the Court.  See Letter from Michael H. Goldstein, dated Oct. 28, 2005 ("Pl. Sur-Reply").  The matter was referred for Report and Recommendation on July 13, 2006.

SCPIE argues that it is not subject to personal jurisdiction under C.P.L.R. § 302(a)(1), and further that any assertion of personal jurisdiction would violate due process because the requisite "minimum contacts" with the forum are absent.  See Def. Mem. at 2-6.

C.  Factual Background Relating to Jurisdiction

The Guarantee Agreement executed by Sirius and SCPIE states in its entirety:

1.  This Guarantee is given by SCPIE Indemnity Company, Los Angeles, CA (SCPIE) in favor of Sirius America Insurance Company, New York, NY (Ceding Company) in consideration of the Ceding Company entering into contract(s) of Reinsurance described in clause 2 with American Healthcare Indemnity

>Company, Los Angeles, CA (AHI).
>
>2.  SCPIE hereby unconditionally and irrevocably guarantees any and all sums payable to the Ceding Company by AHI in accordance with the terms of any contract of Reinsurance entered into between AHI and the Ceding Company from January 1, 2002 to the date of the anniversary of this Guarantee.
>
>3.  This Guarantee will be renewed on the anniversary date hereof [for] successive periods of twelve (12) twelve months unless SCPIE gives the Ceding Company ninety (90) days written notice of its intention not to renew.  Not withstanding the foregoing, it is understood and agreed that this Guarantee shall remain in full force and effect until all sums owing under any contract of Reinsurance entered into between AHI and the Ceding Company shall have been fully paid or discharged.
>
>4.  The maximum sum payable under this Guarantee shall at all times equal the sum of the limits of all unexhausted contracts of Reinsurance entered into by AHI and the Ceding Company.
>
>5.  This Guarantee shall be payable by SCPIE on the Ceding Company's first written demand without any or all of the Ceding Company's legal remedies against AHI having first been pursued.
>
>6.  Written notices served in accordance with this Guarantee by the Ceding Company or by SCPIE shall be served by Fax or Certified Mail to the numbers or postal addresses set forth below.
>
>7.  This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflict of law.

See Guarantee Agreement.  The agreement was signed by both parties in February 2002.  As contemplated by paragraph 6, each party listed an address and fax number.  The following was the information listed for Sirius:

>Sirius American Insurance Company
>375 Park Avenue, Suite 2107
>New York, NY 10152
>Fax. No. 212-753-9764

SCPIE listed an address in Los Angeles, California.  Id.

4

SCPIE is a California corporation, is not licensed to do business in New York, and has not maintained any offices or employees in New York.  See Rivers Decl. ¶¶ 2, 5.  Timothy C. Rivers, a Senior Vice President of SCPIE during the pertinent period, executed the Guarantee Agreement on SCPIE's behalf on February 4, 2002, in Summit, New Jersey, see Rivers Decl. ¶¶ 1, 3.  He then "sent the Guarantee, which I also had drafted in New Jersey, to the office of Maiden Lane Intermediaries USA, Inc. ("MLI") at 600 West Germantown Pike, Suite 270, Plymouth Meeting, Pennsylvania 19462."  See id. ¶ 3.  MLI in turn forwarded the Guarantee Agreement on February 8, 2004, to Sirius at its New York address for execution.  Cho Decl. ¶ 14.  Rivers states that "[a]ll negotiations concerning the Guarantee were conducted with MLI . . . .  I did not communicate directly with Sirius regarding the Guarantee nor am I aware of any other SCPIE officer or employee communicating directly with Sirius regarding the Guarantee."  See Rivers Decl. ¶ 4.

New York is the only jurisdiction in which Sirius has maintained an office during the relevant events.  Cho Decl. ¶ 13.

II. DISCUSSION

    A.  Removal as Waiver of Jurisdictional Defenses

Sirius contends that SCPIE's motion should be denied because it waived any defense of lack of personal jurisdiction it may have had by removing the action to this Court prior to moving to dismiss.  See Pl. Opp. at 4-6.  While this proposition is supported by the case cited by Sirius, Lomaglio Assocs. v. LBK Mktg Corp., 876 F. Supp. 41 (S.D.N.Y. 1995), the holding in Lomaglio was in contravention of Supreme Court law.  See, e.g., Cain v. Commercial Publishing Co., 232 U.S. 124, 133 (1914) (removal did not affect defendant's right to object to personal

5

jurisdiction); accord Morris & Co. v. Skandinavia Ins. Co., 279 U.S. 405, 409 (1929) ("Petitioner suggests that, by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived. Our decisions are to the contrary.") (citations omitted). Moreover, the proposition accepted in Lomaglio was rejected by the Second Circuit the following year in Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 157 n.4 (2d Cir. 1996) (rejecting argument that defendant "waived his defense of lack of personal jurisdiction by removing to federal court and commencing discovery on the merits after filing his motion to dismiss" and holding that "[r]emoval does not waive any Rule 12(b) defenses"). Thus, we do not follow Lomaglio.

   Sirius counters by noting that a later Second Circuit case, Hamilton v. Atlas Turner, Inc., 197 F.3d 58 (2d Cir. 1999), cert. denied, 530 U.S. 1244 (2000), cited Lomaglio among other cases in denying a defendant's motion to dismiss for lack of personal jurisdiction. See Pl. Sur-Reply at 1. Hamilton, however, did not purport to overrule either Cantor Fitzgerald or the governing Supreme Court law. In Hamilton, the defendant included a defense of lack of personal jurisdiction in its answer to the original complaint, but did not move to dismiss on that ground until more than four years after the action had commenced and after the case had been transferred by the Multidistrict Litigation ("MDL") Panel without objection. See 197 F.3d at 60. The Second Circuit held that the defendant had forfeited its jurisdictional defense based on "the considerable length of time – four years – between the assertion of the defense in the answer and the litigation of the defense in a motion" – noting the "[c]onsiderable pretrial activity" that had occurred in the case, including a deposition, merits discovery, and settlement conferences, and the fact that the defendant "had four distinct opportunities to move to dismiss during the

6

four-year interval." See id. at 61.  In discussing one of these opportunities, Hamilton stated: "when the prospect of an MDL transfer arose, [defendant] could have objected on jurisdictional grounds to including this case, or at least sought to defer its inclusion in the transfer until the jurisdictional issue was resolved.  Instead, [defendant] joined with other defendants in asking the MDL to effect the transfer."  See id.  Hamilton then cited Lomaglio as a "cf." citation with the parenthetical: "defendant's invoking authority of district court by removal petition deemed sufficient to forfeit personal jurisdiction defense."  See id.

The citation to Lomaglio in Hamilton is insufficient to constitute a sub silentio overruling of Cantor Fitzgerald or the Supreme Court cases.  Hamilton did not involve a removal from state court to federal court, and the case holds only that there are a combination of circumstances – which are entirely dissimilar to what occurred here – that may result in a defendant's forfeiting its personal jurisdictional defense.  We thus reject reliance on Lomaglio and join other cases subsequent to Hamilton that have continued to follow the rule articulated in Cantor Fitzgerald. See, e.g., Zeballos v. Tan, 2006 WL 1975995, at *6 n.9 (S.D.N.Y. Jul. 10, 2006); Heavy Const. Lumber, Inc. v. Local 1205, Intern. Broth. of Teamsters, 2001 WL 477229, at *4 (E.D.N.Y. Feb. 12, 2001).

Sirius makes the further argument that Cantor Fitzgerald is inapplicable because in that case "the defendant's jurisdictional defense was asserted concurrently with removal," unlike in the instant case, where SCPIE filed its motion to dismiss one week after filing its notice of removal.  See Pl. Sur-Reply at 2.  But the holding in Cantor Fitzgerald did not depend on the fact that the removal and the motion were filed simultaneously.  What was significant for the court was that the defense had been raised "in a timely manner."  88 F.3d at 157 n.4.  Moreover, as

Hamilton notes, "the passage of time alone is generally not sufficient to indicate forfeiture of a procedural right." See 197 F.3d at 61 (citing PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 108 (2d Cir. 1997)). Unlike Grammenos v. Lemos, 457 F.2d 1067 (2d Cir. 1972), this is not a case where the defendant had asked the Court "to act on its behalf in some substantive way" prior to asserting the jurisdictional defense. Id. at 1070.

### B. New York Long-Arm Statute

Personal jurisdiction in a diversity action is determined by the law of the forum in which the federal court sits. See Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985). C.P.L.R. § 302(a)(1) provides that "a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent . . . transacts any business within the state." In 1970, the New York Court of Appeals interpreted this provision as not covering the payment of a guaranty in New York. See Ferrante Equip. Co. v. Lasker-Goldman Corp., 26 N.Y.2d 280, 285 (1970). However, the New York State legislature added a new provision to section 302 in 1979 that permits jurisdiction over a nondomiciliary who "contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). As one New York case has noted:

> Prior to 1979, when our statute simply provided for long-arm jurisdiction where a defendant "transacts any business within the state," it was uniformly held that the statute did not reach a nondomiciliary who was never physically present in the state, but who merely shipped goods into the state (see, e.g., Kramer v. Vogl, 17 N.Y.2d 27). The statute was amended, however, to provide for jurisdiction when a defendant "contracts anywhere to supply goods or services in the state" (see L.1979, ch. 252 § 1 [eff. Sept. 1, 1979]). This amendment was enacted specifically to abrogate the "mere shipment" rule (see McLaughlin, 1979 Supplementary Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, 1984-1985 Pocket Part, CPLR C302:13, p. 42). Accordingly, New York courts may now exercise jurisdiction over a nondomiciliary who contracts outside this State to supply goods or services in New York even if the goods are never shipped or the services are never supplied in New York, so long as the cause of

action, as here, arose out of that contract (see 1979 Report of N.Y. Law Revision Comm., McKinney's Sessions Laws of N.Y., 1979, pp. 1450-1453 . . . .

Alan Lupton Associates, Inc. v. Northeast Plastics, Inc., 105 A.D.2d 3, 6 (4th Dep't 1984).

Since Ferrante, the New York Court of Appeals has not considered the application of the "contracts anywhere" provision to a guaranty made by a non-domiciliary. Lower courts in New York are split over whether personal jurisdiction exists over a guarantor based solely on a guarantee, with some finding personal jurisdiction, see, e.g., Rielly Co. v. Lisa B. Inc., 181 A.D.2d 269, 271 (3d Dep't 1992); Culp & Evans v. White, 106 Misc.2d 755, 756 (N.Y. Sup. Ct. 1981); Wong v. Slotkin, 154 Misc.2d 655, 659 (N.Y. Civ. Ct. 1992), and others declining to exercise jurisdiction, see, e.g., Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner, 243 A.D.2d 1, 5-6 (1st Dep't 1998); First Nat'l Bank & Trust Co. v. Wilson, 171 A.D.2d 616, 618 (1st Dep't 1991); Waldorf Assocs., Inc. v. Neville, 141 Misc.2d 150, 153-54 (N.Y. Sup. Ct. 1988), aff'd mem., 155 A.D.2d 283 (1st Dep't 1989). Federal courts have typically favored finding a guaranty sufficient to come within section 302(a)(1). See, e.g., Key Bank of New York, N.A. v. Patel, 796 F. Supp. 674, 676 (N.D.N.Y. 1992); Lone Star Indus., Inc. v. Chieftain Cement Corp., 795 F. Supp. 87, 90 (W.D.N.Y. 1992); Chase Manhattan Serv. Corp. v. National Business Sys., Inc., 766 F. Supp. 203, 205 (S.D.N.Y. 1991); Bankers Trust Co. v. Nordheimer, 746 F. Supp. 363, 368 (S.D.N.Y. 1990); Manufacturers Hanover Leasing Corp. v. Ace Drilling Co., 720 F. Supp. 48, 49 (S.D.N.Y. 1989).

In 1993, the Second Circuit weighed in on this split of authority, holding that "the New York Court of Appeals would construe a financial guaranty payable in New York as a contract to perform services within the meaning of CPLR 302(a)(1)." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 81 (2d Cir. 1993). A.I. Trade involved a forfaiting transaction, in which the

9

guaranty was for the payment of promissory notes. The promissory notes were payable not to a New York company but rather to a Swiss bank that had designated a bank located in New York as the place of payment. See id. at 78, 82. In response to the guarantor's argument that the location of the payment of the notes – that is, New York – was a "fortuity lacking jurisdictional significance," id. at 82, A.I. Trade took pains to note that the promise to pay in New York was not mere happenstance but rather was a significant part of the forfaiting transaction. Id. Specifically, requiring that payments be made in a "financial capital" – that is, New York – acted as an inducement to the forfaiter to enter into the transaction. Id.

SCPIE attempts to distinguish A.I. Trade by arguing that "the Guarantee Agreement here does not state that it is payable in New York." Def. Reply at 4. On close examination, however, this argument does not carry any weight. First, while the Guarantee Agreement does not designate any particular location for payment of the funds, it would seem obvious that the funds were to paid in New York since Sirius itself is located in New York. In any event, A.I. Trade did not hold that a guaranty must require actual deposit of money in New York in order for a court to find that a guarantor was "supply[ing] [a] . . . service" in New York under section 302(a)(1). Rather, A.I. Trade saw the location of the payment on the promissory notes as significant only because it showed that the guaranty represented a benefit being provided to a New York-based company. Thus, A.I. Trade noted that the "success of the transaction . . . depended on its terms being acceptable to this New York-based forfaiter" and that the requirement that the money be paid in New York occurred because the forfaiter "wanted" it. 989 F.2d at 82. In other words, the fact that the money was to be paid in New York was used to demonstrate that the "service" being supplied was for the benefit of the New York-based forfaiter – not for the benefit of the

Swiss bank to which the notes were in fact payable.  Here, by contrast, had the Guarantee Agreement designated that payment be made to a particular location, that designation would have had no inherent significance.  The "service" being supplied in the Guarantee Agreement is not the deposit of money to a bank account but more broadly the potential enrichment of the beneficiary of the guaranty – an enrichment that happens to be carried out by means of a payment.  See generally Michael Kors Co., Inc. v. Compagnia Internazionale Abbigliamento S.p.A., 1996 WL 509725, at *3 (S.D.N.Y.  Sept. 9, 1996) (personal jurisdiction in New York based on guaranty permitted where, although the payment under guaranty was to be made to a bank in New Jersey, the "final destination" of the funds was New York).

   Thus, had SCPIE's guaranty designated a particular bank or location for payments, such a designation arguably would have been a "fortuity lacking jurisdictional significance" because – unlike the situation in A.I. Trade – there is no doubt for whose benefit SCPIE supplied the "service" of issuing a guaranty: it was only for the benefit of Sirius, a New York-based company.  Therefore the argument that SCPIE was supplying a service in New York is even stronger than was the case in A.I. Trade.  Here, unlike in A.I. Trade, there are no parties potentially benefitting from SCPIE's guaranty other than Sirius itself.  The sole purpose of the guaranty was to lessen Sirius's losses in the event of a default on the underlying obligation.  As a result, because Sirius is a New York-based company, the service of issuing the guaranty was necessarily being "suppl[ied] . . . in [New York]."  C.P.L.R. § 302(a)(1).  Indeed, there are no other candidates for states in which SCPIE's service of issuing the guaranty was being supplied.

   SCPIE notes that some of the guarantee cases, which include those cited favorably in A.I. Trade, involved "instances where the purpose of the underlying obligation was to finance New

York activities or New York-based companies." See Def. Reply at 3. But the reasoning of several of these courts in deciding where the "service" was being "supplied" did not focus on the underlying obligation. Rather, they have focused on the location of the company that was to receive the payments. For example, in Key Bank, 796 F. Supp. at 677, the court opined simply that a guaranty "executed outside of New York State but directed to a New York creditor" satisfied the requirements of section 302(a)(1). Indeed, in reviewing the case law, Key Bank noted that "many of these cases are notably similar to the present in that the defendant's only contact with New York was through a guaranty that was executed outside of New York State but directed to a New York creditor." See id. at 676-77 (emphasis added); accord id. at 676 ("[t]he rule that a guaranty to make payments to a New York entity constitutes a contract to provide services in New York pursuant to CPLR 302(a)(1) is so firmly entrenched in case law that it is hardly worth elucidation") (emphasis added); Bankers Trust, 746 F. Supp. at 368 ("[m]aking a guaranty of payment to a New York corporation is 'supplying goods or services' in the state") (emphasis added).

Some cases also make reference to the fact that the obligation underlying the guaranty had a connection to New York. See, e.g., Rielly Co., 181 A.D.2d at 271; Lone Star Indus., 795 F. Supp. at 89-90. To the extent this fact could be deemed significant, the underlying contract here also has a strong connection to New York. The Share Agreement provided for payments to be made to Sirius, a New York corporation. It also provided that it was to be governed by the laws of New York and that any disputes would be the subject of arbitration in New York. See Share Agreement, Arts. XXI(F), XXIII; see generally Manufacturers Hanover, 720 F. Supp. at

50 (considering choice of law provision in underlying agreement for purposes of determining whether personal jurisdiction existed over guarantor).

SCPIE relies on New York cases, principally arising out of the First Department, holding that a financial guarantee of an obligation due in New York does not by itself provide the basis for the exercise of long-arm jurisdiction.  See Def. Reply at 5 n.2.  But these cases, or their progeny, are the very cases that the Second Circuit declined to follow in A.I. Trade.  989 F.2d at 80-81.  We are of course bound by that determination.

In sum, SCPIE is subject to New York's long-arm statute because its "guaranty to make payments to a New York entity constitutes a contract to provide services in New York pursuant to CPLR 302(a)(1)."  Key Bank, 796 F. Supp. at 676.

C.  Due Process

That the guaranty comes within C.P.L.R. § 302(a)(1) is not sufficient for this court to exercise personal jurisdiction because "[t]he exercise of long arm jurisdiction over [a defendant] by a New York court must also satisfy constitutional due process standards."  Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004).  To determine whether due process is satisfied, "we undertake an analysis consisting of two components: the 'minimum contacts' test and the 'reasonableness' inquiry."  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).

The first prong of this analysis asks whether the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  See Calder v. Jones, 465 U.S. 783, 788 (1984) (quoting Milliken v.

Meyer, 311 U.S. 457, 463 (1940); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In a case such as this one involving specific rather than general jurisdiction, Sirius must show that SCPIE "'purposefully availed' itself of the privilege of doing business in [New York] and that [SCPIE] could foresee being 'haled into court' there." Chaiken v. VV Pub. Corp., 119 F.3d 1018, 1028 (2d Cir. 1997), cert. denied, 522 U.S. 1149 (1998) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

As some courts have noted, "satisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements," see Kelly v. MD Buyline, Inc., 2 F. Supp. 2d 420, 431 (S.D.N.Y. 1998); accord ADP Investor Communication Servs., Inc. v. In House Attorney Servs., Inc., 390 F. Supp. 2d 212, 221 (E.D.N.Y. 2005), and such is the case here. A.I. Trade expressly held that "the guaranteeing of the Notes by [defendant], including the promise to make payment to a New York-based company in New York, constitutes 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and the protection of its laws.'" See 989 F.2d at 82 (citing Burger King, 471 U.S. at 475); see also Chase Manhattan, 766 F. Supp. at 205 (Burger King "purposeful availment" found by "the guarantying of the Lease by [defendant], including the promise to make payments to plaintiff in New York"). SCPIE's reliance on the fact that it has "no presence in New York" and that its activities with respect to the formation of the contract occurred outside New York, see Def. Mem. at 6, are thus insufficient to make out a due process violation. What is important is that SCPIE was a signatory to a guaranty that states on its face that Sirius is a New York corporation with offices in New York. Moreover, the guaranty recites that all

14

correspondence relating to the guaranty was to be mailed to Sirius's offices in New York and includes a New York choice-of-law provision.  The entry into this explicit guaranty was not the sort of "random, fortuitous, or attenuated contact[]" or "unilateral activity of another party or a third person" that have been found insufficient to support jurisdiction.  Burger King, 471 U.S. at 475 (internal citations and quotation marks omitted).  Rather, SCPIE deliberately contracted to provide services to a New York entity and thus it was not unreasonable for SCPIE to anticipate being haled into court in New York in the event that AHI defaulted on its payments to Sirius. See World-Wide Volkswagen, 444 U.S. at 297.

The second prong of the due process analysis consists of a "reasonableness" inquiry.  For the "reasonableness" inquiry, a court considers "whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice -- that is, whether it is reasonable under the circumstances of a particular case."  Chaiken, 119 F.3d at 1028 (citations and internal quotation marks omitted).  Where, as here, a plaintiff makes a "threshold" showing of minimum contacts, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Bank Brussels Lambert, 305 F.3d at 129 (citations and internal quotation marks omitted).  Because SCPIE makes no argument on this point, it has not met its burden of showing that there would be anything unreasonable about exercising jurisdiction over it in this case.

## Conclusion

For the foregoing reasons, SCPIE's motion to dismiss the action for lack of personal jurisdiction should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Barbara S. Jones and to the undersigned at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Jones. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: September 3, 2006
      New York, New York

                                                              GABRIEL W. GORENSTEIN
                                                              United States Magistrate Judge

Copies sent to:

Michael H. Goldstein
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004

David J. McLean
Latham & Watkins LLP
One Newark Center, 16th floor
Newark, New Jersey 07101

Hon. Barbara S. Jones
United States District Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Barbara S. Jones and to the undersigned at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Jones. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: September 13, 2006
      New York, New York

GABRIEL W. GORENSTEIN<br>
United States Magistrate Judge

Copies sent to:

Michael H. Goldstein
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004

David J. McLean
Latham & Watkins LLP
One Newark Center, 16th floor
Newark, New Jersey 07101

Hon. Barbara S. Jones
United States District Judge